DOUGLAS, J., dissenting in part.
This is an appeal of the plaintiff from an order made by JudgeHoke, in which he dissolved a restraining order theretofore made in the case. The plaintiff was, before 1 January, 1904, and at the time this action was commenced (18 January, 1904), engaged in retailing liquor in the city of Washington, N.C. in a large two-story brick building, situated at the corner of Main Street and Whitecar Alley. There is a front (364) door upon Main Street and a side door upon Whitecar Alley, and also a door from the rear of the building, into the lot upon which the building stands; and there has been, and still is, a cellar beneath the building, with a trap door leading to the cellar, and the cellar has been used and could be used for storage purposes. Prior to 1 January, 1904, the plaintiff rented out the second story of the building as a general restaurant, and a part of the time conducted the same on his own account.
On 4 November, 1903, the, board of aldermen of the city of Washington enacted and adopted (to go into effect on 1 January, 1904) the following ordinances: *Page 266 
"1. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to have, use, permit or allow in their saloon, salesroom or place of business any storm doors, partitions, screens, blinds, stained glass or any contrivance which shall in any manner obstruct the view of the interior of his or their saloon, salesroom or place of business, or any part thereof, or which shall in any manner conceal or cut off any view of any person or persons in such saloon, salesroom or place of business from and through the front door and windows thereof. All front doors shall be glass-paneled, one glass to the shutter; the bottom of said panel shall not be more than four feet in height from the level of the sidewalk; the bottom of glass in all front windows shall not be more than four feet in height from the level of the sidewalk; all glass in front windows and front doors shall be kept clean of dirt, specks or anything that will dim or obstruct the view of the interior of such saloon, salesroom or place of business. No counters shall extend more than fifty feet from the front door or doors of said saloon or saloons. All liquor shall be served at the counter, (365) and all liquors drank in said saloon or saloons shall be drunk at the said counter or counters; and any person violating this ordinance shall, upon conviction thereof, be fined fifty dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense.
"2. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to use, permit or allow any side door or rear door, trap-door, elevators or stairways for entrance to or exit from his or their saloon, salesroom or place of business by side or rear door or place of entrance or exit; nor shall any spirituous, vinous or malt liquors be sold or delivered through any window or other opening, and any person violating this ordinance shall, upon conviction thereof, be fined fifty dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense: Provided, nothing herein contained shall prevent the use of such back or side doors by the person or persons carrying on said business, his or their agents, servants or employees, for purposes other than the sale or delivery of liquors.
"3. That it shall be unlawful for any person, firm or corporation to whom shall be granted a license to sell spirituous, vinous or malt liquors by the board of aldermen of Washington, or for *Page 267 
any agent, servant or employee of such person, firm or corporation to sell, give away or in any manner part with, directly or indirectly, any liquor or drinks in his or their saloon, salesroom or place of business between the hours of 8 o'clock in the evening and 6 o'clock in the morning, or permit or allow the doors of his or their saloon, salesroom or place of business to be opened or remain open between said hours; and every person violating this ordinance shall, upon conviction thereof, be fines fifty (366) dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense.
"4. That in every saloon or room where the business of selling spirituous, vinous or malt liquors shall be carried on under a license from the board of aldermen of Washington, the person, firm or corporation holding such license shall keep burning throughout the period of darkness, each and every night, a gas or electric light, of such brightness that objects in the rear of said room may be plainly seen; and no such room shall be entered, opened, kept open or occupied by any person whomsoever between the hours of closing on Saturday night at 8 o'clock and the hours for opening on the next Monday morning at 6 o'clock. Any person, firm or corporation, or his or their servant, agent or employee who shall violate this ordinance shall, upon conviction thereof, be fined fifty dollars.
"5. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to have, use, permit or allow in his or their saloon, salesroom or place of business, or in any room connected therewith, any billiard table or pool table, tenpin alley, gaming tables or any games or gaming devices whatsoever, whether the same be played or used or played for amusement and exercise or for anything of value; and it shall also be unlawful to have, use, permit or allow in his or their saloon, salesroom or place of business, or in any room connected therewith, any restaurant, eating house, room or table, or any means or contrivance whatever for providing, supplying or furnishing food, whether the same is to be provided, supplied or furnished for giving away or for selling to customers; and it shall be unlawful to permit or allow in his or their saloon, salesroom (367) salesroom or place of business obscene pictures, the printing to be exposed to view on the walls thereof or elsewhere in the room. Any person, firm or corporation, his or their agents, servants or employees who shall violate this section shall, upon conviction, be fined fifty dollars. *Page 268 
"6. No saloon shall be conducted nor shall any spirituous, vinous or malt liquors be sold or disposed of in any building in which there is a restaurant, eating house, room, table or any means or contrivance whatever for providing, supplying or furnishing food, whether the same be provided, supplied or furnished free or for pay: Provided, this shall not apply where the saloon or place wherein liquor is disposed of and the room or place where food is furnished or supplied shall be separated by one or more solid, upright, perpendicular walls, with no doors nor openings of any kind therein. Any person, firm or corporation, his or their agents, servants or employees who shall violate this section shall, upon conviction, be fined fifty dollars.
"7. That any and all licenses hereafter granted by the Board of Aldermen of Washington for the sale of liquors shall be issued by the said board and accepted by the applicant therefor, upon the express condition that a violation of any of the foregoing provisions of any statute or ordinance regulating the sale of liquors in or at the saloon, salesroom or place of business for which the license has been granted shall work a forfeiture of said license, and that the said board of aldermen, upon satisfactory evidence of such violation, shall have the power of declaring such license revoked, and such condition shall be incorporated in the license when granted. Upon complaint made to the mayor that any person, company or firm has violated any of the said ordinances or statutes, he shall forthwith summon such person, company or firm to appear before the board of aldermen (368) at a given time, not less than three days' notice being given, to show cause why such license should not be revoked."
On 2 January, 1904, the ordinances being in full force, a license to retail liquor was granted to the plaintiff by the board of aldermen, upon a condition inserted in the license that a violation of any of the ordinances should work a forfeiture of the license.
The plaintiff commenced this action for relief by injunction, his object being to avail himself of the benefits of his license and at the same time to restrain and enjoin the defendant from enforcing the ordinances, on the ground that they were oppressive, vexatious and unreasonable. He is met inlimine by the contention on the part of the defendants that he cannot try the validity of an ordinance *Page 269 
of a municipal corporation by injunction, and that he can have no relief in equity, because he can have full relief in a court of law if the ordinance be unlawful. Cohen v. Comrs., 77 N.C. 2; Wardens v. Washington, 109 N.C. 21;Scott v. Smith, 121 N.C. 94, were cited in the argument of the defendant's counsel here in support of the contention.
In answer to that position, the counsel of the appellant, while questioning the correctness of the law of those cases, yet insists that the facts there can be distinguished from those in the present case; that the reason assigned in those cases by the Court for denying redress in equity is, that the plaintiff could have complete redress in an action at law for damages; that the Court certainly could not have meant that damages could be recovered against the municipal corporations, for the reason that municipal corporations are not liable for torts in the (369) nature of trespass committed by their officers (policemen) when they undertake to enforce unconstitutional and void ordinances enacted in the attempted exercise of police powers or public or governmental functions; nor could it have intended to say that damages could be recovered against the members of the boards of aldermen of cities and towns, individually or personally, for municipal officers who enact ordinances under a claim of power from the legislative branch of the government are vested with the immunities and privileges of government, and consequently are exempt from liability if they have made a mistaken use of their powers, and that the Court must have meant, therefore, that the policemen who actually made the arrests under an unconstitutional municipal ordinance are liable in damages to the person aggrieved. And the counsel of the appellant further insisted that, as in the present case the policemen are and were insolvent, and on that account a recovery against them would be worthless and afford no redress to the appellant for injuries he may have sustained if the ordinances are void, the case was easily to be distinguished from Cohen v. Comrs., supra, and the other similar cases mentioned, where it did not appear that the officers making the arrests were insolvent.
The counsel further contended that the suggestion made in Wardens v.Washington, supra, that one who doubts the validity of a municipal ordinance might raise the question by a defense of himself when he might be arraigned upon a criminal charge for an alleged violation of a town ordinance, places the complainant at a disadvantage; that it would be a hard law to compel a citizen who has no redress in the way of damages against the municipal corporation or its aldermen personally, or from the constable or policeman (on account of his insolvency) who makes *Page 270 
an arrest under an unlawful ordinance, to compel him to (370) violate the law (the ordinance), at his peril, in order to test its validity.
The writer of this opinion is in sympathy with the argument of the counsel of the appellant, but the majority of the Court are of the opinion that the law as laid down in the cases above cited is correct in principle and applies to the facts of this case and to all others in which the attempt may be made to test the validity of a municipal ordinance by injunction. That view of the case by the Court will relieve us of the consideration of the question of the alleged unlawfulness of the ordinance; but as a decision upon that branch of the case would be of so much importance to the public, we will now take up that question for discussion and decision.
No question can be raised in this case as to the power of the board of aldermen to pass reasonable ordinances to restrict and regulate the liquor traffic in Washington, and even to prohibit it if they see fit to do so. In section 18 of chapter 170, Private Laws 1903, entitled "An act to incorporate the city of Washington." it is enacted "That among the powers conferred on the board of aldermen are these: they may . . . regulate, control, tax, license or prevent the establishment of junk and pawn shops, their keepers or brokers, and the sale of spirituous, vinous or malt liquors; . . . provide for the proper observance of the Sabbath, and the preservation of the peace, order and tranquillity of the city." It was argued in this Court for the defendant that, as the board of aldermen were given the power to prevent the sale of intoxicating liquors within the city limits, therefore, under the maxim that "The greater includes the less," ordinances regulating and restricting the traffic, if the aldermen should see fit not to prevent, but to license, whether reasonable or unreasonable, were matters in their discretion, and not reviewable by the courts. We think that is not a proper view of the powers of the aldermen or of the rights of those who may be licensed to sell liquor by the board. (371) They, as we have said, had the right to prevent or prohibit entirely the sale of liquor. They had also the power or prohibit the traffic and to regulate it, and, having adopted as a choice the plan of licensing and then regulating, it must follow that regulations and restrictions must be such as are reasonable, and their reasonableness must be, in case of contest, finally decided by the courts. S. v. Taft,118 N.C. 1190; 32 L.R.A., 122; 54 Am. St., 768; S. v. Yopp, 97 N.C. 477; 2 Am. St., 305.
In the consideration of the reasonableness of these ordinances it must be understood that they are to be discussed from the *Page 271 
point of view of our State legislation on the subject of the liquor traffic and the decisions of our courts upon that legislation. The restrictions and limitations with which the legislative branch of our government for many years past, at the demand of a strong and aggressive sentiment, individual and public, against the evils of intemperance have environed this traffic, and the firm support of this legislation by the courts afford unmistakable evidence that the traffic is dangerous to society in its moral effects, and injurious to the material welfare of the commonwealth. The police power, directly through the Legislature and indirectly through municipal corporations, is being more and more exercised in the regulation and suppression of the sale of liquor on the theory that it is evil in its nature, until such legislation has grown into a system of temperance legislation. Each encroachment, however, has been stubbornly resisted by those engaged in the trade. This Court has in no uncertain language approved of the legislation on this subject. In Bailey v. Raleigh, 130 N.C. 209; 58 L.R.A., 178, the Court said, referring to the restrictions in the prohibition act for Raleigh: "This is done under the exercise of the police power, owing to the evil tendency of the business"; and in S. v. Ray, (372)131 N.C. 814; 60 L.R.A., 634; 92 Am. St., 795, "liquor itself is regarded as an evil; an enemy of civilization and good government."
From the standpoint of the statute law on the subject and the decisions of the Court the rule with reference to what the law would regard as undue restrictions upon a useful business cannot be the same as that applicable to the liquor traffic. What would be a deprivation of the use of property without due process of law, or an infringement of personal liberty against one engaged in a useful trade, would not be such when considered in connection with the property or person with one engaged in the sale of intoxicating liquors, as is pointed out in S. v. Ray, supra, where the Court said: "It must be understood that they (saloons) stand on a very different footing to the sale of dry goods and family groceries. Liquor itself is regarded as an evil, an enemy of civilization and good government. Its sale without a license is condemned and prohibited by law, and the regulations closing at certain hours such shops might well be put upon the implied power as being for the public good."
In looking at the ordinances as a whole it is readily seen that the aldermen in enacting them had in view the purpose to cause the licensee to give publicness to whatever might go on inside of the place in which liquors might be sold instead of allowing secrecy about the matter; to break up, as far as possible, loafing *Page 272 
and loitering in saloons; to prohibit the young or those who might not be permitted to enter the front doors to come in by means of side and rear doors in a clandestine manner, or to get liquor from rear and side doors, or to do indirectly the same thing by means of having eating houses connected with the drinking places; to take from the saloons enticements and allurements which have a tendency to attract the senses and develop and foster the susceptibility of vice and immorality; to close the saloon (373) at hours when general work is over for the day, to the end that the inexperienced, the young and impressionable and the unfortunate of those who have been at work in useful occupations may not be induced to spend their evenings and their money in the barroom; and to have lights kept burning and doors closed during prohibited hours, that the officials may more easily preserve the public peace and order, and that the public may know that the laws in respect to the retailing of intoxicating liquors are being obeyed.
In respect to the first ordinance it is insisted for the plaintiff that that part forbidding the use of partitions was not only enacted without authority and is unreasonable, but that it is positively mischievous, in that it prevents the separation of the white and negro races while they are drinking in the saloon. The law has no requirement for race separation in barrooms, and if their keepers think it necessary to make the separation there is really nothing in the ordinance that prevents them from so doing. The partition can be run from the front toward the counter, and one side can be allotted to one race and the other to the other, and the ordinance will not be violated, for it only provides that the partitions or screens shall not "conceal or cut off any view of any person or persons in such saloon, salesroom or place of business from and through the front doors and windows thereof." We have no decisions of this Court on the subject of the power of municipal corporations, or even of the General Assembly, to prohibit the use in saloons of storm doors, screens, stained glass or any contrivances which obstruct the view of the interior of saloons, or as to what kind of doors and windows, whether of glass or of other material, shall be used; but the decisions from other States fully sustain the requirements of the first ordinance in all these respects, and we (374) are of the opinion that the ordinance is a reasonable one.
We think further that that part of the ordinance which requires that all liquors shall be served at the counter and shall be drunk at the counter is also a reasonable requirement, being calculated to prevent loafing and loitering, and also to diminish the quantity that might be drunk. Drinking to excess would *Page 273 
certainly be more apt to take place where guests could be seated around tables or on lounges with other attractions that might be offered.
In regard to the second ordinance the contention of the plaintiff is that it is "arbitrary, oppressive, vexations, unreasonable and void," in that it deprives the plaintiff of the use and convenience of his property without due process of law. By that ordinance saloon keepers and their servants and employees are not permitted to use any side or rear doors, or trap-doors, elevators or stairways for the purpose of selling or delivering liquor through such communications, but the ordinance does not prohibit the use of such entrances and exits for any other purposes than the sale and delivery of liquors. That certainly is a restriction upon the plaintiff's property, but in our opinion it is not an unreasonable restriction; certainly not one so unreasonable as to warrant us to declare it void. As was said in the case of S. v. Yopp, 97 N.C. 477, "Such statutes (police regulations) are valid unless the purpose or necessary effect is not to regulate the use of property but to destroy it. As we have said, it is the province of the Legislature to decide upon the wisdom and expediency of such regulations and restraints, and the courts cannot declare them void or interfere with their operations unless they are so manifestly unjust and unreasonable as to destroy the lawful use of property, and hence are not within the proper exercise of the police power of the government. Courts cannot regulate the exercise of this power, they can only declare the invalidity of statutes that transcend its limits. The (375) exercise of this power does not extend to the destruction of property under the form of regulating the use of it, unless in cases where the property or the use of it constitutes a nuisance." The plaintiff's property is not destroyed by this ordinance. It is true the regulations concerning its use by the aldermen are stringent, but we cannot say they are too much so when the purposes for which the building is being used are taken into consideration. The board of aldermen have said that that part of the plaintiff's building which he uses for the sale of liquor is a suitable place and sufficient for that purpose, and that the use of the forbidden parts of that building in connection with the sale of liquor are not necessary and would prevent, if so used, the proper regulation of the sale of spirituous liquors. We have no doubt that the defendants, under the power given in the charter, had a right to confine the sale of liquor to a particular room in that building, and to prohibit the use of side and rear doors, trap-doors, elevators and stairways leading to and out of that room for the purpose of selling or delivering liquors. *Page 274 
It is contended that the third ordinance is unlawful for the reason that it prohibits the selling or giving away liquors between the hours of 8 o'clock in the evening and 6 o'clock in the morning, and also that it prohibits the saloon keeper or his employees to open the doors or allow them to remain open between said hours. In S. v.Thomas, 118 N.C. 1221, the hours prescribed by the ordinance were 10 o'clock p. m. and 4 o'clock a. m., and there was no question made in that case on the reasonableness of such hours. It seems to us that the hours of closing and opening in the case before us are not unreasonable. For a few months in the year there might be, in the mornings, a couple of hours of daylight in which the retailing (376) of liquor might be carried on, but it does seem that those hours — hours in which the greater number in each community is engaged in preparing for the day's duties and living — might be spent in some useful way without injury to the saloon keeper. He would then have nearly fourteen hours in which to supply the demand for his wares. That ought to be ample time for all legitimate needs and necessities.
So far as the requirement in the fourth ordinance — that places for the retailing of liquor shall be kept reasonably lighted — it seems to us there can be no just objection, for on its face it seems a very fair and proper police regulation; but in respect to that requirement which makes it unlawful for the owners of saloons to enter their buildings between the hours of closing on Saturday night at 8 o'clock and the hour for opening next Monday morning at 6 o'clock, we have some doubt. In S. v.Thomas, 118 N.C. 1221, the charge was that the defendant remained in his barroom after the hour prescribed for closing. In that case the ordinance made "it unlawful for any barkeeper, clerk or agent or any person whatsoever to keep open or be or remain in a barroom or other place where spirituous or intoxicating liquors are sold between 10 o'clock p. m. and 4 o'clock a. m. The Court there held that the charter of Marion did not empower the town to pass the ordinance, and that under the general law (Code, sec. 3800) the power did not exist to pass the ordinance. Under the charter of the city of Washington the board of aldermen, as we have seen, had the power either to prohibit the sale of liquor or to regulate and control its sale, and the only question is whether this part of the fourth ordinance, preventing the owners of saloons from entering their saloons during Sundays, is reasonable. As we have said we have our doubts about this matter, but as that part of the ordinance (377) is not clearly unreasonable, and remembering that the board of aldermen have full opportunity to judge of *Page 275 
such a necessity, we do not feel called upon to set aside their judgment by declaring the ordinance invalid on the ground that it is unreasonable. We cannot see that the objections to the fifth ordinance are reasonable objections. Billiard tables, pool tables, gaming tables, ten-pin alleys and other gaming devices, whether played for amusement and exercise or for anything of value, are such attractions as ought not to be used in saloons where liquor is sold. They entice and allure men into the temptation to drink, and encourage loafing and lounging. It is true that in the Revenue Laws of 1903 a tax is levied on billiard and pool tables and bowling alleys connected with any place where liquor is sold or allowed to be drunk, whether kept under the same roof or not, but it does not follow from this that it is not in the power of a municipal government that is authorized by its charter to prohibit the sale of liquor, or to license its sale and then regulate it and declare that billiard and pool tables shall not be used in connection with barrooms. It is only where they are not prohibited from being used by the lawful authority that they can be taxed. Under the fifth ordinance there is no prohibition against the use of restaurants or eating houses, rooms or tables for providing or furnishing food, being kept in the same building in which liquor is sold, but the prohibition is against having such restaurants or eating houses connected with the barroom. We cannot say that that prohibition is unreasonable. The sixth ordinance enacts that no place where spirituous, malt or vinous liquors are sold or disposed of shall be in any building in which there is a restaurant, eating house, room, or any means or contrivance for providing or furnishing food, unless the two places shall be separated by one or more solid upright perpendicular walls with no doors nor openings of any kind therein. That seems to us a very proper regulation. Such a (378) condition of affairs we can see would be most conclusive to the bringing together of elements of society whose conduct in many instances would tend to produce disorder. We may take judicial notice of a fact so well known, that these joint eating houses and drinking saloons afford opportunities for carousals and lawlessness, and are sore spots in many communities.
It is provided in the seventh ordinance that in case of a violation of any of the ordinances of the town regulating the sale of liquor by one licensed to sell liquor, the board of aldermen may have the power to investigate the matter and to revoke the license in case it should be found that the ordinance had been violated. We see no objection to the ordinance as applicable to this case, especially as the plaintiff in this case had agreed to that method of trial. But if that ordinance was invalid yet the others would *Page 276 
not be affected, and the plaintiff or any licensee of the board of aldermen of Washington might be made to pay the fines mentioned in the ordinances by the proper tribunal, upon its being made to appear that the ordinance had been violated.
Chapter 233, Laws 1903, has no application to the city of Washington for, as we have seen, the charter of that city confers on the aldermen the power to regulate or to prevent the sale of intoxicating liquors, and section 19, of chapter 233, of the Laws of 1903, particularly declares the purpose of the act to be not to interfere with such municipalities or territories as are given the power to regulate or to prohibit the sale of intoxicating liquors.
No error.