STATE v. RAY.

(Filed December 16, 1902.)

ORDINANCES—*Invalid—Police Power—Cities and Towns.*
   An ordinance of a town requiring stores to be closed after 7:30
     in the evening is invalid.

CLARK, J., dissenting.

INDICTMENT against J. D. Ray, heard by Judge *George
A. Jones,* at September Term, 1902, of the Superior Court
of HALIFAX County.

Following is the ordinance:

"ORDINANCE 41½.

"It shall be unlawful for bar rooms, groceries, dry goods
stores and other places where merchandise is bought and sold
(except drug stores, for the sale of drugs and medicines only),
to be kept open later than 7:30 o'clock p. m., except Satur-
days.   Any one violating this ordinance shall be fined five
dollars for each and every violation.

"1. It shall be the duty of the Chief of Police to ring the
town bell every day, except Saturdays and Sundays, at 7:30
o'clock p. m., as a notice to all to obey this ordinance.

"3. This ordinance shall go into effect on Monday, July
7, and remain in full force and effect until the 1st day of
October, 1902, unless repealed by the Town Commissioners
before that time.   This July 4, 1902."

From a verdict of guilty on a special verdict and judgment
thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *E. L. Travis,* for
the State.

*W. A. Dunn,* for the defendant.

STATE *v.* RAY.

FURCHES, C. J.   The defendant is the owner of a dry goods and grocery store (not of liquors) in the town of Scotland Neck, Halifax County.

Scotland Neck is an incorporated town, and on the "fourth of July," 1902, the Commissioners of said town passed this ordinance: "It shall be unlawful for bar rooms, groceries, dry goods stores and other places where merchandise is bought and sold (except drug stores for the sale of drugs and medicines only) to keep open later than 7:30 o'clock p. m., except Saturdays.   Any one violating this ordinance shall be fined five dollars for each and every violation."

The defendant admits that he is the owner of a dry goods and grocery store in the town of Scotland Neck, and that he has kept it open later than 7:30 p. m. since the 7th day of July, 1902, the date at which said ordinance was to go into effect, but pleads not guilty, and a special verdict was returned finding the facts as above.

It is admitted that the charter of said town gives no special authority for the passage of such an ordinance, and that the Commissioners had no authority for the passage of said ordinance, except the general powers incident to municipal corporations.

This presents squarely the question of corporate power to pass and enforce such an ordinance without any legislative authority to do so, except the fact that it is a chartered municipality.   It is therefore not necessary that we should discuss the power of the Legislature to pass such an act, or to authorize a municipality to pass such an ordinance, and we do not enter into the consideration of that matter.

It must be admitted that the enforcement of this ordinance would be to deprive the defendant of his natural right— would be to interfere with the free use and enjoyment of his property, used in such a way as not to interfere with the rights of others.   It is not shown, nor is it suggested,

that defendant's keeping his store open after 7:30 interfered with the *rights* of any one else. It was said that the other merchants in Scotland Neck were willing to close their stores at 7:30, but the defendant was not; and the ordinance was passed to compel him to do so, for the reason that if he kept open the others would be compelled to do so or to give the defendant the benefit of the trade of the town after that time. But did this give the Commissioners the right to close the defendant's store?

It would seem that no legislative power exists under our form of government and our ideas of personal liberty, as to allow such to interfere with the rights of ownership and dominion over his own property, except such interference be exercised for the protection and benefit of the *public*. When such interference is authorized, it is under the doctrine of eminent domain, or what is known as the police power of the government. The attempted exercise of the power in this instance is clearly not under the doctrine of eminent domain, but it is said to be under the police power of the government. If the State could exercise such power (and we do not say it could), can a municipal corporation do so without express authority from the State? The general rule is that a municipal corporation can only exercise such powers as are expressly given in its charter, or such as are necessarily implied by those expressly given. This doctrine is well expressed by Mr. Dillon in volume 1, Sec. 89, which is copied by Justice Avery in *State v. Webber,* 107 N. C., 962; 22 Am. St. Rep., 920; and is approved and adopted by this Court in that case: "It is a general and undisputed proposition of law that a municipal corporation possesses, and can exercise, the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

Any fair reasonable doubt concerning the exercise is resolved by the Courts against the corporation, and the power is denied." The same doctrine is probably more pointedly stated as applicable to the case now under consideration, in *State v. Thomas,* 118 N. C., 1221, as follows: "An ordinance, says Dillon (1 Mun. Corp., Sec. 325), can not legally be made which contravenes a common right, unless the power to do so be plainly conferred by a valid and competent legislative grant; and, in cases relating to such rights, authority to regulate conferred upon towns· of limited powers, has been held not necessarily to include the power to prohibit. If the general power to pass by-laws, intended for local government merely, carries with it, by implication, the authority to restrict the use of private property by prescribing the hours when a person shall be permitted to occupy his own house, then cities and towns need nothing more than the enactment of a law creating them, with the incidental grant embodied in section 3799 of The Code, to give them equal authority with the Legislature itself to restrict and regulate the rights of personal liberty and private property within the limits of the municipality. No such latitudinarian construction was intended by the Legislature to be given by the statute, and its attempted exercise was therefore unlawful."

It seems to us that these authorities settle the question and plainly show that this ordinance was unlawful and can not be enforced.

It is said that towns are constantly exercising such power over bar rooms where liquors are sold. This power, so far as our investigation goes, is expressly given in the charters. But if there is any case where it is not, it must be understood that they stand on a very different footing to the sale of dry goods and family groceries. Liquor itself is regarded as an evil, an enemy of civilization and of good government. *Bailey v. Raleigh,* 130 N. C., 209 ; *State v. Barringer,* 110 N. C.,

525. Its sale without a license is condemned and prohibited by law, and the regulations closing such shops might well be put upon the implied power, as being for the public good. But however that may be, that is not the question before the Court, and what has been said as to the sale of liquors has only been said to meet an argument of the State.

It is also said that the State of California has exercised such power without express legislation, and that the Supreme Court of the United States affirmed the judgment of the California Court. But when those cases are examined, it will be found that they were cases where the business of ironing was carried on all night in a thickly settled portion of the city of San Francisco, consisting of old wooden buildings near the sound, where the wind usually blew hard, which made it very dangerous to carry on such work, at late hours of the night, on account of fire. And the opinions rest upon the ground that it was for the *public good*—the protection of the public from the danger of fire, that the city was allowed to prevent such persons from carrying on such work at such late hours of the night. But the Supreme Court of the United States only affirmed the ruling of the State Court, which is the rule of that Court where there is no Federal question involved. So it amounts to no more than a decision of the Supreme Court of California against the repeated decisions of our own Supreme Court. And were we to admit that the distinction does not exist between the California case and this case, which we have pointed out, the question then is, shall we adhere to our own decisions when we are not able to see any error in them, or shall we adopt the opinion of the Court of California? We prefer to follow our own decisions, and are of the opinion that the corporate authorities of Scotland Neck were not authorized to pass the ordinance under consideration, and it is void.

There is error, and under the special verdict, the defendant

STATE *v.* RAY.

was entitled to an acquittal and discharge.    The judgment of the court below is

Reversed.

CLARK, J., dissenting.    On 4 July, 1902, the town of Scotland Neck passed an ordinance prohibiting "bar-rooms, groceries, dry goods stores and other places where merchandise is bought and sold (except drug stores for the sale of drugs and medicines only) to be kept open later than 7:30 p. m. except Saturdays" under penalty of five dollars for each violation, and it was made the duty of the chief of police to ring the town bell at 7:30 p. m. every day, except Saturdays and Sundays, as notice.    The ordinance prescribed that it was to be in force from 7 July to 1 October.    The defendant admits that he comes within the class specified and did not comply with the ordinance, but kept open his store for the sale of dry goods and groceries later than 7:30 p. m. and conducted his business just as if the ordinance had not been passed.

The sole defence is that the ordinance is invalid.    The judge below sustained the action of the mayor who imposed a fine of $5, and the defendant appealed.    The object of the ordinance as was stated on the argument, and as is readily apparent, was to give the clerks and other employees of stores a rest from toil in the hot months of July, August and September after 7:30 p. m.    At that season the days are hot and long, business is dull and purchases can readily be made by the community without inconvenience before 7:30 p. m. To avoid any reasonable objection Saturday night is excepted and the "early closing" is limited to the three hottest and dullest months in the year.    It seems strange that any one should object to this modest concession to the clerks and others who for small compensation are at work from sunrise till late at night, the balance of the year.

So reasonable is the regulation that by common consent the merchants of most of the towns, probably, in the State, have for years by voluntary agreement adopted it. But as one merchant in a town, by holding out against it can force all other stores to keep open, thus compelling all the clerks and other employees to forego this small concession, the commissioners had no other means to secure the cessation of work so beneficial to the health and comfort of a large and useful class in the community than by the passage of this ordinance.

There can be no question of the reasonableness of such an ordinance and if this action of the local legislature did not correctly express the wishes of their constituents, or did not prove satisfactory, public sentiment would soon cause its repeal or at least the matter would be corrected by the election of a board of commissioners of a different cast. *Hellen v. Noe,* 25 N. C., 493. Certainly, if the power to pass the ordinance exists, the propriety of its passage is a matter that can be better determined by the commissioners elected by the people of the town, and conversant with the surroundings and the wishes of their constituents, than by five lawyers assembled in a public building in Raleigh.

The ordinance being a reasonable one, the only possible question is that of the power to pass the ordinance. The charter of the town (Private Laws, 1901, Chapter 342, Sec. 15) broadly gives its commissioners the usual powers conferred on towns and cities by The Code, Chap. 62. Among the powers conferred expressly by that chapter are, independent of the inherent and incidental powers of every municipal corporation, those of The Code, Sec. 3799: "They shall have power to make such by-laws, rules and regulations for the better government of the town as they may deem necessary; provided the same be not inconsistent with this chapter or the laws of the land," and Section 3802: "They may pass laws for * * * preserving the health of the citizens." In *Hill v.*

*Charlotte,* 72 N. C., at page 56 the Court says: "We conceive that *nothing can be clearer* than that when a general authority is given to a municipal corporation to be exercised through its proper legislative officers, to make ordinances for the good government, health and safety of the inhabitants and their property, it is thereby left entirely to the discretion of those authorities *to determine what ordinances are proper for those purposes.*"

In *State v. Austin,* 114 N. C., at p. 856, 41 Am. St. Rep., 817; 25 L. R. A., 283, Burwell, J., speaking for the Court, after setting out in full the above, section 3799 of The Code, says emphatically: "This is an express grant of authority to the officers of this municipal corporation to exercise within the territory made subject to their control *the police power of the State,* the only expressed restriction upon their action being that the rules and regulations made by them shall not be inconsistent with the laws of the land." There is no law forbidding a regulation giving clerks and other employees "in stores, bar-rooms and groceries," a breathing spell after 7 :20 p. m. on five days during the three hottest and dullest months of the year. If the Legislature can confer such power on any municipality (as is admitted) the above decision holds that it has been done. It is a most reasonable regulation, a humane and just regulation and in the interest of the public health and comfort and detrimental to the interest of no one. As was well said by Daniel, J., in *Hellen v. Noe,* 25 N. C., 499, with that confidence in the capacity of the people for self-government and ability to regulate for the best their own local matters, which marked the utterances of that Court: "If a majority of the citizens of the town deem the ordinance impolitic or injurious to the people of the corproation, they have the power in their own hands to remedy the evil; but we can not say that this ordinance is either against the general law or is in itself unreasonable." The

people are the best judges of their own interest and wishes, and, as Judge Daniel says, the correction should be left to them, unless an ordinance is on its face in violation of some statute enacted by the will of the law-making power of the whole State, or is so unreasonable in its nature as to be beyond the police power confided to the municipality by virtue of the general statute.

A case almost on all fours with this, in the terms of the ordinance, and presenting certainly the very question of the power of the town to pass such an ordinance as this, has been held in favor of the power, by the Supreme Court of the United States. *Barbier v. Connolly,* 113 U. S., 27. An ordinance of the City of San Francisco closed all laundries and wash houses "from 10 o'clock at night till 6 o'clock in the morning." Those opposing the measure argued that the motive was to discriminate against the Chinese. Those defending it said it was because such occupation was dangerous on account of liability from fire. The Court adhering to the settled ruling that the motive in passing a statute or ordinance can not be considered, unless it appear on the face thereof, held: "The provision is *purely a police regulation within the competency of any municipality possessed of the ordinary powers belonging to such bodies.* * * * The same municipal authority which directs the cessation of labor must necessarily prescribe the limits within which it shall be enforced. * * * This is a matter for the determination of the municipality in the execution of its police powers."

The validity of the same ordinance was again presented in *Soon Hing v. Crowley,* 113 U. S., 703, and was more fully and elaborately discussed, and the following points, having no reference whatever to the danger from fires were decided: "The objection that the fourth section is void on the ground that it deprives a man of the right to work at all times is equally without force. However broad the right of

every one to follow such calling and employ his time as he may judge most conducive to his interests, it must be exercised subject to such general rules as are adopted by society for the common welfare. All sorts of restrictions are imposed upon the actions of men, notwithstanding the liberty that is guaranteed to each. It is liberty regulated by just and impartial laws. Parties, for example, are free to make any contracts they choose for a lawful purpose, but society says what contracts shall be in writing and what may be verbally made, and on what days they may be executed and how long they may be enforced, if their terms are not complied with. So, too, with the hours of labor. On few subjects has there been more regulation. How many hours shall constitute a day's work, *at what time shops in cities shall close at night,* are constant subjects of legislation. Laws setting aside Sunday as a day of rest are upheld, not from any right of the government to legislate for the promotion of religious observances, but from its right to protect all persons from the physical and moral debasement which comes from uninterrupted labor. Such laws have always been deemed beneficent and merciful laws, especially to the poor and dependent, to the laborers in our factories and work shops and *in the heated rooms of our cities*; and their validity has been sustained by the highest Courts of the States."

After these two explicit and unanimous decisions of the highest Court known to our laws that any town, "possessed of the ordinary powers," has the right to pass "such beneficent and merciful" ordinances, for the health and comfort of the toilers "in the heated rooms" of our towns and cities, by "prescribing hours for closing at night," no one has ever since contested the validity of such ordinances in that Court, and the State Courts have been as humane. Not till now has any Court recorded a decision to the contrary.

The above cases began in the United States Circuit Court

and went thence to the Federal Supreme Court. But the Supreme Court of California has cited those cases and heartily endorsed the principles therein laid down (*In re Hang Kie,* 69 Cal., 152), quoting with approval: "The provision is purely a police regulation, within the competency of any municipality possessed of the ordinary powers belonging to such bodies."

In Missouri, under a statute worded like our Code, Sec. 3799, above cited, a city ordinance closing stores, shops and other places of business at 9 a. m. on Sunday was held valid. *St. Louis v. Cafferata,* 24 Mo., 94: It seems there was no State prohibition as to opening stores on Sunday.

In *State v. Freeman,* 38 N. H., 426, it was held that a town ordinance prohibiting restaurants from being kept open after 10 o'clock at night was valid and authorized by a statute not so broad as our Code, Sec. 3799. To same purport *Hudson v. Geary,* 4 R. I., 485. And there are other authorities to the same effect, as Judge Field says in *Soon Hing v. Crowley, supra,* and none to the contrary. The validity of an ordinance closing bar rooms at a specified hour is impliedly recognized as valid and authorized by The Code, Sec. 3799, in the discussion in *State v. Thomas,* 118 N. C., 1221, which holds invalid, not the requirement to close the bar but the prohibition of the proprietor to remain in it after it was closed.

In 1 Dillon Mun. Corp., Sec. 400 (4th Ed.), it is said: "Under a general power to pass any other by-laws for the well-being of the city its council may, by ordinance, prohibit saloons, restaurants and other places of public entertainment, to be kept open after a specified hour, and objections that such by-law was unreasonable and deprived the citizen of the constitutional right of 'acquiring property,' were not considered to be well taken."

If the Town Commissioners of the progressive and grow-

STATE *v.* RAY.

ing town of Scotland Neck thought it would conduce "to the better government and aid to preserve the health of many of its citizens," The Code, Secs. 3799 and 3802, to close the places of business (except for sale of drugs and medicines) at 7 p. m. on five days in the week during July, August and September, and that in so ordering they were executing the wishes of a majority of their constituents, are they not the best judges thereof, subject to correction only at the ballot box when a new board is chosen? Our system of government favors local self-government. Whenever any effort is made in the interest of humanity to lessen the hours of toil and give a breathing spell, a chance, however small, for the enjoyment of life to the employed, a protest is almost always made on the ground stated by Judge Field (113 U. S., 703) that "it deprives a man of the right to work at all times." This objection means simply that it deprives the objector of the right to work "the other fellow" at all times, without stint or limit.

Some one has said with more force than truth or elegance that "civilization is hell to the under dog." On the contrary, civilization consists in greater humanity and consideration for the comfort, the convenience, the health of those who are not able to compel or to buy that which should be conceded them voluntarily or guaranteed by law. The purpose of a government of law is the protection of the weak, for the strong can take care of themselves. The brief recreation and surcease from toil given by this ordinance during the hot summer evenings to the clerks and other employees of the stores in their town is an act which reflects credit upon the Commissioners of Scotland Neck. Their action is warranted by the decisions of the highest Court in the Union and of several States, and their power to do so has not till now been denied in any.