ABNER L. JOHNSON v. TOWN OF PHILADELPHIA.

[47 South. 526.]

1. NUISANCES. *Skating rink.*

A skating rink is not a nuisance *per se.*

2. SAME. *Municipalities. Ordinances. Reasonableness.*

The power of a municipality to pass ordinances is subject to the implied restriction that they shall be reasonable, consistent with the general law, and not destructive of lawful business.

3. SAME. *Example of void ordinance. Code* 1906, § 3340.

> A municipal ordinance requiring skating rinks to be closed at six
> o'clock in the afternoon or evening, and remain closed until six
> o'clock the next morning, is an unreasonable exercise of the power
> (Code 1906, § 3340) to regulate, suppress and impose a privilege
> tax on skating rinks, and is void.

FROM the chancery court of Neshoba county.

HON. JAMES F. McCOOL, Chancellor.

Johnson, appellant, was complainant in the court below; the town of Philadelphia was defendant there. The object of the suit was to enjoin the enforcement of an ordinance requiring skating rinks to close at six o'clock in the afternoon or evening and remain closed until six o'clock the following morning. From a decree in defendant's favor the complainant appealed to the supreme court. The facts are stated in the opinion of the court.

*G. E. Wilson* and *E. S. Richardson,* for appellant.

It is not contended by appellee in this cause by proof that the operation of the said skating rink was a nuisance. The proof is overwhelming that the rink was orderly conducted; that it was attended by the best people of Philadelphia for their pleasure, recreation and physical benefit.

The case of *Levin v. Goodwin,* 114 Am. St. Rep. 616, is in many ways similar to the one at bar. Suit was instituted to enjoin the operation of a bowling alley in the second story of a building adjoining that occupied by complainant. Defendant pleaded a license granted him by the board of police and the lower court held that the plaintiff would have substantial relief if the operation of the alleys should be discontinued at night between the hours of ten o'clock p. m. and six o'clock a. m. This judgment was reversed and the appellate court said: "A license to keep a bowling alley granted by municipal authorities under power conferred on them by the legislature, protects the person licensed, though such maintenance by the making of

noises operates as a substantial disturbance of the occupants of adjacent property and results in their pecuniary loss, if the bowling alley is constructed and operated in the usual manner and with the usual safeguards. The operation of a bowling alley cannot by the court, be restrained to certain hours of the night to relieve occupants of adjacent property from noise, if such alleys have been licensed by the municipal authorities, acting under a power conferred on them by the statute." Further the court says: "The judge of the superior court seems to have based his finding in favor of the plaintiff upon the ground that the plaintiff would have substantial relief from further disturbance and loss if the operation of the alleys should be discontinued at night, between the hours of ten o'clock p. m. and six o'clock a. m. This may be true, but the court had no authority to change the hours named in the license, or to offer the plaintiff relief so long as the conditions of the license were complied with." In the case at bar appellant has secured from appellee a license for the operation of his business, without any modification, and, according to the proof in the case, he had done nothing which his license did not authorize him to do under any reasonable construction of the contract. The license had only been granted him a few days prior to the passage of the ordinance in question, which in effect was to suppress the business of appellant, since it is proven in this case and a matter of common knowledge that to prohibit the operation of a skating rink in a small town after six o'clock p. m. amounts to suppression.

*C. L. Dobbs,* for appellee.

Police power is said to be "that inherent sovereignty which it is the right and the duty of the government or its agents to exercise whenever public policy in a broad sense demands, for the benefit of society at large, regulations to guard its morals, safety, health, order, or to insure in any respect such economic conditions as an advancing civilization of a highly complex

character requires." 8 Cyc. 863; 18 Am. & Eng. Ency. of Law (2d ed.) 739.

Municipalities have the right to control and regulate places of amusement, hawkers, pedlers, locations of livery stables, market houses, and in fact anything that in any way interferes with the public convenience, welfare, safety, morals, health or expediency. In *State v. Pamperin,* 42 Minn. 320, billiard rooms and bowling alleys are expressly included. 15 Am. & Eng. Ency. of Law (2d ed.) 1181. In a number of cases cited in 15 Am. & Eng. Ency. of Law (2d ed.) 1188, note 2, it is held beyond question that under this general welfare provision of our law it was within the authority and jurisdiction of the board of aldermen to order saloons and other like institutions, even restaurants, to be closed at certain hours.

The present court at its last term in our humble judgment, has forever settled this case in the case of *Crittenden v. Booneville,* 92 Miss. 277, 45 South. 723, wherein it was held that while a municipality might not have the right to prohibit the actual operation of any business which had been licensed, yet it had full power to regulate the same.

*May, Flowers & Whitfield,* on the same side.

The question involved is answered conclusively and settled beyond all question in this state by Code 1906, § 3340, which says that "the mayor and board of aldermen shall have the power to regulate, suppress and impose a privilege tax on all * * * skating rinks," etc.

The meaning of this section is plain. The statute speaks for itself. It says in plain and simple words that the mayor and board of aldermen shall have power to regulate, suppress * * * pool rooms * * * skating rinks, etc.

The ordinance is one, the purposes of which is merely to regulate, and not to suppress, skating rinks and pool rooms in the town of Philadelphia. The meeting of the board was regular; the ordinance was passed according to the law prescribed for

the passage of ordinances and to our minds it must stand. Certainly there can be no question as to the right of the board to regulate, within reason, the hours of an enterprise as noisy, in the very nature of the thing, as a skating rink. If this were not true, why could not a rink on every corner, with the noise attending it, be operated all night and not a person in Philadelphia be allowed to sleep?

MAYES, J., delivered the opinion of the court.

The town of Philadelphia derives its power as a municipal corporation from the Code chapter on municipalities. On January 24, 1907, its mayor and board of aldermen passed the following ordinance, viz:

"Sec. 1. Be it ordained by the board of mayor and aldermen of the town of Philadelphia, Mississippi, that the poolrooms, billiard parlors, dance halls, and skating rinks, doing business at this time or hereafter, in said town, shall close at six o'clock p. m. and remain closed until six o'clock a. m. and that any person managing or operating any such poolroom, dance hall or skating rink after six o'clock p. m. and before six o'clock a. m. or any person found playing pool or billiards, dancing or skating in any public hall or place herein between such hours shall be fined not less than $5 nor more than $100, or be imprisoned not more than thirty days, or both.

"Sec. 2. Be it further ordained that the necessities and interest of the town demanding it this ordinance be in full force and effect after this date."

At the time the above ordinace was passed, Johnson was conducting a skating rink in the town of Philadelphia, having previously paid all state and municipal taxes, and, after the passage of the ordinance he procured an injunction against the town of Philadelphia enjoining the enforcement of the ordinance on the ground that it destroyed his business, was unreasonable, and void.

The great preponderance of testimony shows that Johnson

conducted his business in an orderly manner, and that he allowed no such conduct in his place of business as would warrant the board of mayor and aldermen in suppressing it. But, if this were not true, the ordinance plainly shows that it was enacted under Code 1906, § 3340, giving municipalities the power "to regulate, suppress and impose a privilege tax on all circuses, shows, theaters," etc., "skating rinks, * * * and other like things." If we were disposed to consider this ordinance as an ordinance suppressing a nuisance, it could have no validity, as a skating rink is not a nuisance *per se,* and no general declaration of the mayor and board of aldermen, through the medium of an ordinance declaring it to be a nuisance, without any notice to the party conducting the business and without reference to the fact of whether it is in fact a nuisance, can make it so.

Into every charter power given a municipality to pass bylaws or ordinances there is an implied restriction that the ordinances shall be reasonable, consistent with the general law, and not destructive of a lawful business. It is manifest that, if Johnson is not allowed to operate his skating rink except between the hours of six o'clock a. m. and six o'clock p. m., business will be destroyed. His is a place of amusement, and so far as this record shows, a place of innocent amusement, the main business of which is done after six o'clock p. m. Under pretense of regulating a business, the business attempted to be regulated cannot be destroyed. This was not the intention of the legislature. If the legislature had intended that amusements of this character could be prohibited by a municipality, they would have said so in unequivocal terms.

In Freund on Police Power, section 63, it is said: "There is implied in every delegation of power to a municipal corporation a condition that the power must be exercised reasonably, and that therefore every unreasonable ordinance is *ultra vires,* and the court in treating it as null and void merely enforces the legislative will and principles or policies embodied in it."

And again, in section 158, it is further said: "The requirement of reasonableness is so general in its nature that it allows the courts to exercise a very efficient control over ordinances without being under the necessity of formulating in each case a principle which would be a guide for other cases."

The section of the Code giving a municipality the power to regulate and suppress gives no power to prohibit. Skating rinks and such like can be suppressed only when as a fact they become nuisances, and when they are regulated it must be in a reasonable way. In McQuillin on Municipal Ordinances, p 79, it is said: "The power 'to regulate' will not be construed to include the power to prohibit. 'A power simply to regulate does not embrace a power to prohibit or destroy a trade or occupation.' Therefore ordinances to be valid cannot interfere with lawful employment."

The fact that the state law authorizes the conducting of the business is evidence that it was in contemplation of the law that the places should exist. *State v. Mott,* 61 Md. 297, 48 Am. Rep. 105; Dillon on Municipal Corporations, § 325.

In the case of *Crittenden v. Booneville,* 92 Miss. 277, 45 South. 723, the court said that the power given the municipality, under Code 1906, § 3340, "to regulate, suppress and impose a privilege tax on all circuses, shows,' etc., does not carry with it the power to prohibit, unless it is in the exercise of the police power to suppress a nuisance. The municipality may regulate; that is to say, it may provide the hours during which these places may keep open, etc., and if the conduct of the owner is such as to warrant so doing, or if the place is conducted in a boisterous or immoral way, so as to become a nuisance, it may suppress altogether. But the power to regulate and suppress when the business has become a nuisance is one thing and the power to pass a general ordinance prohibiting the operation of a poolroom, which has been legalized by the statute, is another thing. The first a municipality has the power to exercise. The second it is without power to do."

We can establish no fixed and permanent guide to settle in future cases what is and what is not a reasonable exercise of the power of regulation. Each case must largely be determined by its own facts. In the *Crittenden case* we held that the municipality may provide the hours during which a place of business of the character under discussion may be kept open, etc., yet, when the hours prescribed ruin the business under the guise of regulating, such a regulation is unreasonable.

The nature of the business being conducted forms an element for the consideration of the court in determining whether or not an ordinance is unreasonable as an ordinance regulating a business. It is unreasonable to say that a skating rink shall be kept open only between the hours of six a. m. and six p. m., and such ordinance cannot be upheld. Rights cannot be stealthily taken away under the power to regulate. The power to regulate is given for a wholesome purpose. It is a defensive power of municipalities, and not a weapon of destruction.

*Reversed and remanded.*