PURVIS *v.* CITY OF OCILLA *et al.*

1. The operation of a pool or billiard room for public entertainment is a business which, from its very nature, admits of strict regulation under the police power. *Trammell* v. *Yancey,* 142 *Ga.* 553 (83 S. E. 114); *Trammell* v. *Rome,* 142 *Ga.* 602 (83 S. E. 221); *Booth* v. *Illinois,* 184 U. S. 425 (22 Sup. Ct. 425, 46 L. ed. 623); *Murphy* v. *California,* 225 U. S. 623, 629 (32 Sup. Ct. 697, 56 L. ed. 1229, 41 L. R. A. (N. S.) 153).

(a) The police power may be exercised by the State, and it is now settled that the right to exercise it may be delegated by the State to a municipal corporation created by the State.

2. Where a municipality is authorized to regulate a lawful business, trade, or profession under the police power, but is without express charter authority to prohibit entirely such business, trade, or profession within the city, an ordinance enacted in pursuance of the power to regulate must be a reasonable exercise of the power. This is true where the power is conferred under the usual general welfare clause, and where

it is conferred expressly and the mode of its exercise is not prescribed. *Manor* v. *Bainbridge,* 136 *Ga.* 777 (71 S. E. 1101), and cases there cited; *Cutsinger* v. *Atlanta,* 142 *Ga.* 555, 565 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 80); 2 Dill. Mun. Cor. (5th ed.) § 600.

3. All reasonable regulations designed to confine the business of keeping pool rooms for public use within a municipality to responsible persons of good character are valid. To that end municipal authorities may require, as a condition precedent to one's engaging in such business, (1) the making of a written application and the granting of a license thereon; (2) the giving of a solvent bond, conditioned to .keep an orderly house or -room, to observe the ordinances of the city and the regulations prescribed for such business, and to pay all fines imposed for the violation of municipal ordinances. *Shurman* v. *Atlanta,* 148 *Ga.* 1 (95 S. E. 698); *Campbell* v. *Thomasville,* 6 *Ga. App.* 212 (5, 7), 232, 233 (64 S. E. 815).

4. Municipal authorities clothed with charter power may provide that any violation of the ordinance under which a license to operate a pool room for public use is granted shall ipso facto revoke the license to conduct such business. Properly construed, such power authorizes the municipality to revoke the license only for cause. *Cassidy* v. *Macon,* 133 *Ga.* 689 (66 S. E. 941); *Shurman* v. *Atlanta, Campbell* v. *Thomasville,* supra.

5. A municipality, under the usual general welfare clause of its charter, may provide that pool rooms conducted for .public entertainment within the city shall not be kept open between the hours of 7 p. m. and 6 a. m., or on Sundays or holidays or "such days as the mayor and council shall direct." *Morris* v. *Rome,* 10 *Ga.* 534; *Watson* v. *Thomson,* 116 *Ga.* 546 (42 S. E. 747, 59 L. R. A. 602, 94 Am. St. R. 137); *Campbell* v. *Thomasville,* supra. If the mayor and council should arbitrarily enforce such provision, the courts would afford a remedy. Yick Wo *v.* Hopkins, 118 U. S. 356 (6 Sup. Ct. 1064, 30 L. ed. 220).

(*a*) A provision of a municipal ordinance making it unlawful for any person to sell, or offer for sale, any article of merchandise in a pool room, or to carry on or conduct any other business, trade, or calling at such place, is not an unreasonable exercise of the police power.

(*b*) A license (as distinguished from a tax for the purpose of raising revenue) of $125 on the first table, $100 on the second table, and $75 on the third and each additional table kept in a pool room for public entertainment, is prima facie valid.

6. The business of conducting pool or billiard rooms for public entertainment may, under the usual general welfare clause of a municipal charter, be confined to reasonable territorial limits within the municipality.

7. The general welfare clause of the charter of the City of Ocilla provides that "the mayor and aldermen of said city shall have full power and authority to pass or enact all ordinances or by-laws . . for the prevention of disorderly or immoral conduct, and conduct liable to destroy the peace and tranquillity of any citizen therein, or a sojourner therein, and every other by-law, resolution, and ordinance that may seem necessary and proper for the security of the peace, health, order,

and good government of said city." Acts 1902, p. 525, sec. 35. Section 42 of the charter (page 539) confers upon the municipal authorities the power to "tax and license billiard and pool tables; . . . any person or persons doing a brokerage business, or pawnbrokers in said city; . . or any other business, trade, or profession carried on in said City of Ocilla; and they shall pass all ordinances necessary to carry into effect this section." Section 28 of the charter · (p. 535) confers upon the municipal authorities the power to "revoke at any time any license that may·be granted by their authority, for the violations of the ordinances, rules, and regulations granting the same, or when it shall to them appear that it is to the best interest of the city to do so." Under such charter provisions the city has the power to license and regulate pool or billiard rooms kept for public entertainment with the city; and, applying the principles stated in the foregoing headnotes, none of the provisions of the pool-room ordinance enacted by the mayor and council of Ocilla appear to be unreasonable, ·except the provision confining the operation of pool rooms to certain designated portions of two named streets within the city. The limitations prescribed by the ordinance are, under all the facts appearing in the record, unreasonable.

(a) The provision of the ordinance restricting the territory in which pool rooms may be conducted within the city, and which we have held to be unreasonable, is not such a vital part of the ordinance, and is not so interwoven in the whole legislative scheme, as to render the entire ordinance void.

8. Under the general law of this State, the sale of "all liquors and beverages or drinks made in imitation of or intended as a substitute for beer, ale, wine, or whiskey, or other alcoholic or spirituous, vinous, or malt liquors, including those liquors and beverages commonly known and called near-beer," is prohibited. Acts Ex. Sess. 1915, pp. 77, 80, sec. 1. Section 3 of the act just cited provides that "it shall not be lawful or authorized for the State, or any county or municipality therein, to license within this State the sale, dealing in, or furnishing of any of said prohibited liquors or beverages, including imitations of or substitutes therefor." The ordinance enacted by the mayor and council of the City of Ocilla, fixing a license or tax of $300 on all dealers in "near beer or any other imitation of beer, cider, apple juice, or any imitation of cider, or any non-alcoholic drink which is an imitation of an alcoholic drink," is void and unenforceable, because the sale of such beverages is prohibited by the general law of the State.

(a) While the sale of cider and apple juice is not prohibited by the general law of the State, this court will not presume that the municipal authorities intended to exact a tax of $300 of dealers in cider and apple juice alone. The invalid part of the ordinance is therefore so interwoven with the valid as to destroy the whole municipal legislative scheme.

9. On its facts this case is not within the general rule that courts of equity will not enjoin threatened criminal prosecutions, but it falls within the exception thereto. See *Carey* v. *Atlanta,* 143 *Ga.* 192

(84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916E, 1151); *Baldwin* v. *Atlanta,* 147 *Ga.* 28 (92 S. E. 630).

No. 1413. FEBRUARY 12, 1920.

Petition for injunction. Before Judge Eve. Irwin superior court. March 10, 1919.

*H. E. Oxford* and *Quincey & Rice,* for plaintiff.

*Rogers & Rogers* and *Philip Newbern,* for defendants.

GEORGE, J. With the exception of the ruling made in the seventh headnote, to the effect that the provision of the pool-room ordinance designed to restrict the operation of pool rooms for public entertainment to defined areas within the city is unreasonable, none of the foregoing rulings require discussion. The legislature may confer upon municipal authorities the power to prohibit outright the keeping of pool rooms for public use within the limits of the city. *Trammell* v. *Rome,* 142 *Ga.* 602 (83 S. E. 221). And this is true although the legislature may have imposed a license or tax (for the purpose of raising revenue) upon the business of keeping pool rooms for public use. Acts 1918, pp. 43-49, sec. 22. But, in the absence of express legislative authority, the municipal authorities can not, under the decisions of this court, prohibit the keeping of public pool rooms within the municipality; and this is true although the charter, in addition to the general welfare clause, contains a provision expressly authorizing the authorities to license or tax pool rooms. Under the rule recognized in this State the authority to license and regulate does not imply the power to prohibit, but rather implies that the business is to be allowed to continue under such reasonable regulations as the authorities may adopt. See *Sanders* v. *Commissioners of Butler,* 30 *Ga.* 679; *Gilham* v. *Wells,* 64 *Ga.* 192; *Watson* v. *Thomson,* supra; *Miller* v. *Shropshire,* 124 *Ga.* 829 (53 S. E. 335, 4 Ann. Cas. 574). Keeping in view the foregoing, we will consider only the undisputed facts in this case. On February 7, 1919, the mayor and council of Ocilla enacted an ordinance requiring the payment of a license of $1000 on each billiard or pool table kept for public use within the city. This ordinance expressly provided that no pool room should be allowed on Fourth Street. The plaintiff was then conducting a pool room on Cherry Street in the City of Ocilla. The ordinance permitted the keeping of the pool room on Cherry Street. The plaintiff filed a petition for injunction against the enforcement of the ordinance, upon the ground that

the license required of him was unreasonable, oppressive, and prohibitory. A temporary restraining order was granted, and the city was required to show cause why the order should not be made permanent. Before the interlocutory hearing, and on February 21, 1919, the mayor and council repealed the ordinance and enacted a new ordinance, under the provisions of which every keeper of a pool room was required to pay a license of $350 on the first, $250 on the second, and $100 on the third and each additional table. The new ordinance expressly provided that no person should be allowed or permitted to conduct a pool or billiard room except on Fourth Street (between Beach Street and the S. A. L. Ry., approximately 1½ blocks) and on Irwin Avenue (between Third and Fifth Streets). The plaintiff filed an ancillary petition for injunction against the enforcement of the new ordinance, upon the ground set forth in his original petition, and upon the further ground that the provision restricting the locality within which pool rooms might be operated in the city was also unreasonable, unjust, oppressive, and prohibitory. Before the interlocutory hearing on the ancillary petition, the mayor and council further amended the pool-room ordinance, and the ordinance as finally amended provided that every keeper of a pool room should pay a license of $125 on the first, $100 on the second, and $75 on the third and each additional table. But the provision of the ordinance restricting pool rooms to the defined areas on Fourth Street and Irwin Avenue was re-enacted. This ordinance was made effective during the years 1919 and 1920. The plaintiff presented his second ancillary petition to enjoin the enforcement of the ordinance; and the order refusing the interlocutory injunction is under review in this case.

It appears that subsequently to the enactment of the original ordinance on February 7, 1919, the plaintiff leased a building for the purpose of conducting a pool room on Cherry Street within the limits as then prescribed by the mayor and council, paid his rent, and secured a State and county license to carry on his business on Cherry Street in the City of Ocilla. It also appears that on February 21, 1919, the date of the second ordinance, which excluded pool rooms from Cherry Street, no building on either Fourth Street or Irwin Avenue, within the limits prescribed by the new ordinance, was obtainable; and that neither at the time

of the enactment of the second ordinance nor at the time of the enactment of the third ordinance was it possible to obtain any building, by lease or otherwise, within the area as then prescribed by the municipal authorities. It further appears that there are, strictly speaking, only two business streets in the City of Ocilla— Fourth and Cherry Streets. Irwin Avenue is the principal residence street of the city, although a few business houses are located thereon. The intersection of Fourth and Cherry Streets is considered the center of the business district of the city. The two banks of the city are located on opposite corners at the point of intersection of these streets. The plaintiff's pool room is located 200 feet from the center of the business district and about 150 feet from the city hall, the headquarters of the city's police force. The police officers of the city can clearly see the pool room from the center of the business district. When the provision of the ordinance fixing the area in which pool rooms may be operated in the city is read in connection with the undisputed evidence in the record, the conclusion is inevitable that the real and primary purpose of the ordinance was not to regulate the business in question but to prohibit the plaintiff and all others from engaging in it in the city. The case differs on its facts from the case of *Manor v. Bainbridge*, supra, where it was held that the fact that one sold "near bear" during 1909 and 1910 "under a license from the municipal authorities at a certain place, and that he made valuable improvements at such place for the purpose of operating there a near-beer saloon, did not make invalid a municipal ordinance passed in December, 1910, whereby it was made unlawful after that year to sell 'near beer' in the city limits, except within specified territory which did not embrace the place above referred to," and where it was further held that the ordinance of the City of Bainbridge restricting the area in which "near beer" might be sold was not shown to be unreasonable merely by proof that in the designated territory every "suitable" building for the sale of near beer was occupied at the time of the passage of the ordinance and at the time of the hearing of the interlocutory injunction, and that it would be impossible to procure a building in which to carry on the sale of near beer at any "reasonable" price. In the present case pool rooms were expressly excluded from Fourth Street, but were allowed and permitted on Cherry Street on

February 7. Fourteen days thereafter pool rooms were expressly excluded from Cherry Street and permitted only on a certain part of Fourth Street and within two specified blocks on another named street. We do not suggest that the mayor and council might not for sufficient reason rescind an ordinance permitting pool rooms on Cherry Street and enact a new ordinance excluding pool rooms from Cherry Street. From the record in this case it appears ·that the conditions on Cherry Street were the same on February 7 and February 21. Not only was it impossible to obtain a suitable building for the plaintiff's pool room at a reasonable price on Fourth Street and Irwin Avenue, but no building was obtainable on either of these streets. These facts, and others which we have not discussed but which appear in the record, serve to distinguish the present from the case of *Manor* v. *Bainbridge,* supra. Under the ruling made in the 8th headnote it follows that the court erred in refusing to enjoin the enforcement of the ordinance known·as the soft-drink ordinance, and that he also erred in refusing to enjoin the enforcement of that provision of the pool-room ordinance which restricted the keeping of pool rooms to the area designated in the ordinance. There was no error in refusing to enjoin the enforcement of the other provisions of the pool-room ordinance.

*Judgment reversed in part, and affirmed in part. All the Justices concur.*

ATKINSON, J., concurring specially. Under the facts of the case, so much of the ordinance as required pool rooms conducted for public entertainment to remain closed between the hours of 7 p. m. and 6 a. m. was unreasonable and void. Johnson v. Philadelphia, 19 L. R. A. (N. S.) 637 (94 Miss. 34, 47 So. 526, 19 Ann. Cas. 103).