## STATE EX REL. NEWMAN v. CITY OF LARAMIE, ET AL.

(No. 1506; March 5, 1929, 275 Pac. 106)

*Sullivan* and *Garnett,* for appellant.

*C. M. Eby* and *Charles B. Coolidge,* for respondents.

*Kinkead & Pearson* and *G. R. McConnell, Amicus Curiae.*

*Sullivan* and *Garnett,* in reply.

KIMBALL, Justice.

This action was commenced in the District Court on a petition for a writ of prohibition to be directed to the City of Laramie and certain city officers, including the police justice, restraining the prosecution of the relator for the violation of an ordinance of that city. The case was heard by the District Court on an agreed statement of facts. The permanent writ prayed for was denied, and the alternative writ issued at the commencement of the action was quashed. The case is here on appeal.

The ordinance is entitled "An Ordinance for Licensing, Regulating and Controlling Barber Shops," and the following summary of its provisions shows its purpose:

Section 1 authorizes the city health officer to inspect all barber shops and to enforce the rules and regulations of the ordinance, and declares that all shops shall be open for inspection at any time during business hours. Section 2 provides that no shop shall be operated except under a license to be issued by the city clerk, and fixes the amount of the license fee. Section 3 provides numerous sanitary rules and regulations. Section 4 provides that no shop shall be used as a dormitory, and that no person afflicted with any communicable disease shall work or be served therein. Section 5, which contains the provision in question in the case, is as follows:

"No barber shop shall open for business earlier than eight o'clock A. M., nor shall any such barber shop close later than six o'clock P. M. throughout the year, excepting on Saturdays and days preceding the following legal holidays: January 1st, May 30th, July 4th, Labor Day, Armistice Day, Thanksgiving and Christmas day, when they shall close not later than nine o'clock P. M. All shops shall remain closed on Sundays and the holidays named above."

Section 6 prescribes punishment by fine for violation of the provisions of the ordinance.

The agreed statement of facts shows the passage and text of the ordinance; that relator, the owner and proprietor of a barber shop, conducts his shop in a clean and orderly manner, but allows it to remain open for business later than 6 o'clock p. m. of each day; that he was being, and would continue to be, prosecuted therefor, and that the sole point in issue was the validity of the ordinance as affecting the relator.

The only question in the case is raised by relator's assertion that the city has no power to require that his shop be closed from 6 o'clock in the evening until 8 o'clock in the morning of certain days. We understand that there is no contention that the ordinance is invalid in requiring the shops to be closed on Sundays and the named holidays. The relator claims that the questioned provision is unreasonable and contrary to Section 1 of the 14th Amendment to the Constitution of the United States. The defendants claim that it is a reasonable exercise of power delegated to the city by Section 1958, Wyo. C. S. 1920, which provides:

"Power and authority is hereby granted to each incorporated city or town within the state, to license, regulate and control barber shops."

We think the constitutional question need not be decided.

In the past there have been some differences of opinion in reference to the power of courts in enforcing the fourteenth amendment to inquire into the reasonableness of acts of the legislature of a state, but the power to make such inquiry with respect to municipal by-laws or ordinances was recognized before the adoption of the fourteenth amendment, and exists independent of any limitation in the written constitution. Freund on Police Power, Sec. 142. If a municipal ordinance, passed under authority conferred in general terms, is found to be unreasonable,

the court will say that the legislature never intended to give authority to pass it. Freund, Sec. 63; McQuillan, Mun. Corp. (2d. Ed.) Sec. 761; Champer v. Greencastle, 138 Ind. 339, 35 N. E. 14, 24 L. R. A. 768; 46 Am. St. Rep. 390. This has been said to be particularly so in regard. to ordinances having relation to the liberty of the citizen or the rights of private property. Yick Wo v. Hopkins, 118 U. S. 356, 371; 6 S. Ct. 1064, 30 L. Ed. 220.

We think the point in issue here can be disposed of by deciding whether the grant of power to ''license, regulate and control barber shops'' ought to be construed to include the power to order that barber shops be closed from 6 in the evening until 8 in the morning. The grant of power to license and regulate implies that the business is to be allowed to continue under such reasonable regulations as the local authorities may adopt. Purvis v. City of Ocilla, 149 Ga. 771, 102 S. E. 241. We must, then, apply to the challenged provisions of the ordinance the test of reasonableness, and in doing so may refer to cases that have discussed the reasonableness of statutes as well as those that have discussed the reasonableness of municipal ordinances, for, of course, a principle that would render a statute invalid would apply with at least equal force to an ordinance.

In discussing the extent and limits of what is known as the police power, much has been said about this test of reasonableness. In considering the reasonableness of a regulation, the courts do not profess to substitute their judgment for that of the legislature on questions about which reasonable men might differ. If the purpose of the law is to promote the public welfare, the means adopted need not be the best. State v. W. S. Buck Merc. Co., (Wyo.) 264 Pac. 1023, 1025; 57 A. L. R. 675. It has been said that reasonableness, in the sense the word is used in this connection, means ''moderation and proportionateness of means to ends.'' Freund, Sec. 63. The following from Lawton v. Steele, 152 U. S. 133, 137; 14 S. Ct. 499, 38 L. Ed. 385, has been quoted by this court, State v. City of

Sheridan, 25 Wyo. 347, 358; 170 Pac. 1, 3, 1 A. L. R. 955, and often elsewhere:

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations."

The law must have a real or substantial relation to the public interest in the matter regulated. Mugler v. Kansas, 123 U. S. 623, 661; 8 S. Ct. 273, 31 L. Ed. 205. And, while the courts repeatedly have said that they should not decide as to the expediency of a measure, it has come to be settled by the high court whose decisions establish the rules limiting the exercise of the police power, that a court should and does determine whether, in its judgment, the law has a real or substantial relation to objects and purposes recognized as legitimate. 21 Harv. L. Rev. 499; 40 Harv. L. Rev. 953. The claim that the restriction in the law bears a reasonable relation to a public interest must not rest on mere conjecture, but must be supported by something of substance. Louis K. Liggett Co. v. Baldridge, 49 Sup. Ct. Rep. 57, 73 L. Ed. 45. The extent to which regulation may reasonably go varies with different kinds of business. It depends on the nature of the business, the feature that touches the public, and the abuses reasonably to be expected. Wolff Co. v. Industrial Court, 262 U. S. 522, 539; 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280.

Laws regulating barber shops are upheld as proper measures for the protection of the public health. The right to regulate is based on the fact that disease may be spread by unclean and insanitary practices. The purpose of the laws is to prevent this by regulations that will require

that shops be operated in a clean and sanitary manner by clean and competent barbers. Cooper v. Rollins, 152 Ga. 588, 110 S. E. 726, 20 A. L. R. 1105, and cases in note, 20 A. L. R. 1111. A regulation that bears no real or substantial relation to that purpose is an arbitrary interference with a lawful and useful business. Chaires v. Atlanta, 164 Ga. 755, 139 S. E. 559, 55 A. L. R. 230; Timmons v. Morris, (D. C.) 271 Fed. 721.

Unless the closing regulation in question in the case at bar bears a real and substantial relation to the purpose of protecting the public from the spread of disease, it stands on the same footing as any similar restriction on the right of a citizen to engage in a harmless and useful occupation.

In State v. Ray, 131 N. C. 814, 42 S. E. 960, 60 L. R. A. 634; 92 Am. St. Rep. 795, the defendant was charged with violation of an ordinance requiring the closing of stores at 7:30 p. m., excepting Saturdays. The court said:

"It must be admitted that the enforcement of this ordinance would be to deprive the defendant of his natural right—would be to interfere with the free use and enjoyment of his property, used in such a way as not to interfere with the rights of others. It is not shown, nor is it suggested, that defendant's keeping his store open after 7:30 interfered with the rights of anyone else. It was said that the other merchants in Scotland Neck were willing to close their stores at 7:30, but the defendant was not, and the ordinance was passed to compel him to do so, for the reason that if he kept open the others would be compelled to do so, or to give the defendant the benefit of the trade of the town after that time. But did this give the commissioners the right to close the defendant's store?

"It would seem that no legislative power exists, under our form of government and our ideas of personal liberty, as to allow such interference with one's right of ownership and dominion over his own property, except such interference be exercised for the protection and benefit of the public. When such interference is authorized, it is under the doctrine of eminent domain, or what is known as the "police power of the government." The attempted exercise of the power in this instance is clearly not under the doctrine of eminent domain, but it is said to be under

the police power of the government. If the state could exercise such power (and we do not say it could), can a municipal corporation do so without express authority from the state?"

The questions thus propounded by the court were answered in the negative.

In Saville v. Corless, 46 Utah 495, 151 Pac. 51, L. R. A. 1916A 651; Ann. Cas. 1918D 198, the court considered a state law requiring commercial and mercantile houses to close at 6:00 p. m. The court found several objections to the law, but on the question now of interest to us said, among other things, that:

"We think it also offends against constitutional rights to enjoy, acquire, and possess property, the most valuable of which is that of alienation—the right to vend and sell. There are things the sale of which may be restricted, regulated, or even prohibited by the legislature, and enterprises which may be restricted, regulated, and controlled. But such legal interference must rest on the police power of the state to promote or preserve public health, public morals, public safety, public convenience, and general welfare. The act here has no such purpose, and in no sense tends to promote or preserve public health, morals, peace, order, safety, convenience, comfort, or welfare. It is but an arbitrary and an unwarranted interference with a merchant's business. One or a number of merchants may desire to close their store at 6 o'clock. They may do that. But they, by legislation, cannot compel every other merchant to close at the same hour. They can run their own business, but not their neighbor's."

See, also, Johnson v. Philadelphia, 94 Miss. 34, 47 So. 526, 19 L. R. A. (N. S.) 637; Ex parte Harrell, 76 Fla. 4, 79 So. 166, L. R. A. 1918F 514; City of Buffalo v. Linsman, 113 App. Div. 584, 98 N. Y. Supp. 737.

The principle is illustrated in a negative way by other cases. In upholding laws that restrict the operation of businesses at night, the courts have taken pains to point out that the restrictions bear a reasonable relation to the in-

terests of the public. Thus, it has been held that a law may require reasonable closing hours for pawnshops, second-hand stores and junk dealers, in order to prevent thieves from disposing of stolen property, Hyman v. Boldrick, 153 Ky. 77, 154 S. W. 369, 44 L. R. A. (N. S.) 1039; for auctions, particularly of jewelry, to prevent fraud on the buying public, and avoid the dangers incident to the assembling of crowds at night, Biddles v. Enright, 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766; for laundries, to guard against fires at night, Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 28 L. Ed. 1145; for pool and billiard halls, on the ground that they encourage idleness and loitering, Tarkio v. Cook, 120 Mo. 1, 25 S. W. 202, 41 Am. St. Rep. 678; for places where ''soft drinks'' are sold, on the ground of the facility with which sales in such a business may be used as a disguise for sales of intoxicants. Churchill v. Albany, 65 Or. 422, 133 Pac. 632, Ann. Cas. 1915A, 1094. Laws regulating the hours of closing of businesses that are merely tolerated, Sunday closing laws, and laws limiting hours of labor, are justified by familiar reasons not applicable to the regulation we are now considering.

It apparently is well understood that courts ought not to undertake to establish any permanent rules to settle in future cases what is and what is not a reasonable exercise of the power to regulate a business. Johnson v. Philadelphia, 94 Miss. 34, 47 So. 526, 19 L. R. A. (N. S.) 637, 19 Ann. Cas. 103. There is no doubt that the reasonable regulation of some businesses may require that they be closed during certain hours of the night. On the other hand, it is equally clear that from the mere fact that a business may be regulated for certain purposes, as, in this case, to prevent the spread of disease, it does not necessarily follow that the business may be prohibited during certain hours. The case of Brown v. City of Seattle, (Wash.) 272 Pac. 517, drew in question a city ordinance regulating the business of selling meats, and providing for

inspections. Among other regulations was one declaring it unlawful to sell any meat, or keep a butcher shop open for business, or to receive in the shop any meat, except between the hours of 7 o'clock a. m. and 6 o'clock p. m. After an extended review of authorities, that regulation which forbade the keeping open of a butcher shop for sale of meat products to the public later than 6 o'clock p. m., was declared void because it did not in any practical manner tend to prevent the sale to the public of unwholesome meats, and was an unreasonable interference with a lawful business. All other regulations prescribed by the ordinance were held or conceded to be valid as a proper exercise of the power to enact reasonable measures in the interest of the public health.

Where the exercise by municipal authorities of the power to prescribe closing hours for business houses is considered free from any question of constitutional limitation, it has been referred to as a "somewhat violent interference with the rights of a considerable body of persons to engage in a legitimate business." Re McCoubrey v. Toronto, 9 D. L. R. 84, 93; Halladay v. Ottawa, 15 Ont. L. R. 65, and, also, a cause of inconvenience to a part of the public who have but little opportunity of patronizing the businesses during permitted hours. Re McCoubrey v. Toronto, supra; Halladay v. Ottawa, 14 Ont. L. R. 458.

The District Court, in denying the writ of prohibition, followed the decision of the Supreme Court of New Jersey in the case of Falco v. Atlantic City, 99 N. J. L. 19, 122 Atl. 610. The ordinance in question in that case required barber shops to close from 8 p. m. to 7 a. m. It was passed pursuant to a statute granting to municipalities express authority to regulate the hours of opening and closing barber shops on week days, as well as Sundays. Ch. 97, Laws N. J., 1917. This act of 1917 permitting regulation of opening and closing hours was held to be within the police power, on authority of Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923, and Soon Hing v. Crowley,

supra, in which regulations of the hours of closing public laundries were held not in violation of the fourteenth amendment. As the laundry cases have usually been understood, the ordinances requiring laundries to be closed at night were upheld as reasonable measures to protect the public from the danger of fires at night from the operation of a business requiring constant fires in a locality composed largely of wooden buildings. See comment on those cases in State v. Ray, 131 N. C. 814, 42 S. E. 960, 60 L. R. A. 634, 92 A. S. R. 795; Yee Gee v. San Francisco, 235 Fed. 757; note, L. R. A. 1916A, 655. We think Barbier v. Connolly and Soon Hing v. Crowley are in accord with the general view that regulations of the hours during which a business house may be kept open must have a reasonable relation to some public interest. In Falco v. Atlantic City, the relation of the closing hours to the public interest is explained thus, 99 N. J. L. 21:

"It seems probable that one reason for the legislation upon which it (the ordinance) rests was to enable municipal authorities to fix a definite time within which their inspectors might readily and adequately perform their duties with respect to such places. Barber shops are public places, frequented by all classes. Sanitary supervision thereof is very generally regarded as necessary and powers conferred to that end should receive liberal construction so that they may be rendered effective. (citing authority) To allow barber shops to remain open to the public at all hours of the night might well be regarded as rendering ready and adequate inspection inconvenient or difficult or even impossible, and consequently detrimental to public health."

The closing hours were there supposed to have been fixed to facilitate inspection. To the same effect, under meat inspection law, are Ex parte Lowenthal, (Calif. App.) 267 Pac. 886, and Ex parte Hennessy (Calif. App.) 273 Pac. 826, apparently opposed to Brown v. City of Seattle, supra, (Wash.) 272 Pac. 517.

Counsel for defendants insist that, on authority of Falco v. Atlantic City, the questioned provision of the ordinance

in the case at bar should be upheld as a reasonable regulation enacted for the purpose of facilitating inspection.

In the case relied on the statute plainly granted to the city the right to fix hours of closing. The court thought it probable that this had been done in order to permit the city to make ready and adequate inspections that might otherwise be inconvenient, difficult or even impossible. In the case at bar, the city's power to fix closing hours does not arise from such a specific grant, and must exist, if at all, as an incident to the power to regulate. The power has been exercised by prescribing sanitary regulations and by providing for inspections to see that those regulations are followed. Such provisions are conceded to be reasonable. There is nothing in the statute to show that the legislature thought the municipal corporation would need to close the shops in order more readily to inspect them, nor is there anything on the face of the ordinance to show that the closing of shops at 6 o'clock in the evening was necessary, or even thought by the municipal authorities to be necessary, to facilitate inspection. There is nothing in the agreed facts to show when or how inspections are usually made. So far as we know, a barber shop in operation after 6 o'clock can be as readily and adequately inspected as one in operation before that hour. The possible, suggested difficulty is that inspectors cannot be on duty at all hours of the night without placing too great a burden on the municipality. Perhaps, to those who are familiar with the times and methods of inspecting barber shops, this reason would seem absurd. If, for instance, in the administration of such an ordinance an inspection is made of each shop once a month, once a week, or even once each day, there would seem to be no substantial reason for the claim that the closing of the shops at 6 in the evening was at all necessary to facilitate inspection. In the absence of facts, we may not be justified in any definite assumption as to the frequency and nature of the inspections. We cannot, however, refrain from saying that the record on appeal shows

that, on an application for stay of execution, the relator presented to the District Court his affidavit, not contradicted, in which he states that, so far as he knows, the city health officer has never inspected his shop from May, 1927, when the ordinance was passed, to November, 1927, when the affidavit was made.

There is hardly any business that cannot to some extent be regulated in the interest of the public health or safety. Freund, Sec. 143. Laws prescribing sanitary regulations, requiring the maintenance of safety devices and the labeling of compounds, abound in the statutes of this and every other state. Many of them have been in force for years. Most of them provide for inspections, but it is only in the few recent cases that we have cited that it has been supposed that the right to inspect includes the right to restrict the operation of the business by fixing closing hours. It will readily be seen that a principle that would permit the closing of barber shops as a reasonable exercise of the power to inspect, would permit a like restriction in regard to many of the other businesses which are regulated under the police power.

We are not willing to suppose that the absence of closing regulations might render effective inspection impossible. We may grant that it might render it more inconvenient and, perhaps, more expensive. If that be so, a weighing of the conflicting interests—that of the barber to pursue a useful occupation so long as he complies with the sanitary regulations, and that of the public to have the shop inspected—makes it reasonable to suppose that the legislature, in granting the power to license and regulate without mention of the power to close the shops, intended that the inconvenience and expense of inspection, if not covered by the license fees, should be borne by the public, instead of intending that the city authorities should fix an arbitrary closing hour.

We are of opinion that the provision complained of is not a reasonable exercise of the power to license, regulate

and control barber shops. It, therefore, is unauthorized and void. The judgment will be reversed, and the case remanded for the entry of a judgment consistent with the views herein expressed.

BLUME, C. J., and RINER, J., concur.