THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A

# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00546-SCT

*DELMER L. LARSON, JR. AND TERESA C. LARSON*

*v.*

*CITY OF CANTON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/24/95 |
| TRIAL JUDGE: | HON. EDWARD G. CORTRIGHT JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | J. M. RITCHEY |
| ATTORNEY FOR APPELLEE: | PATRICK M. RAND |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 4/3/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

For many years, an event known as the Canton Flea Market has taken place in Canton, Mississippi on the second Thursday in May and the second Thursday in October of every year. The Canton Flea Market is one of the largest and oldest flea market events in the state of Mississippi. The Canton Flea Market is not operated by the City of Canton, but is a joint effort of several civic, religious, and nonprofit groups, as well as various individuals.

The May Flea Market attracts an average crowd in excess of 30,000 people; in October, the crowds exceed 45,000. For each event, the City issues approximately 1,500 Flea Market permits to various vendors, allowing them to take part in the event. The City receives revenue from the issuance of Flea Market permits and from sales taxes collected on Flea Market sales. The revenue is used to offset expenses for additional services in connection with the flea market.

On April 1, 1986, the City of Canton had enacted a Flea Market Ordinance which served the purpose

of establishing Flea Market Days, Flea Market zones, and requiring a special Flea Market permit in order to sell merchandise, food or beverages on the second Thursday of May and the second Thursday of October of each year.

Delmer Larson and his wife, Teresa Larson, plaintiffs and appellants herein, commenced this action for an injunction, damages, and other relief against the City of Canton, Mississippi. The Larsons paid the required license fee to the City and were issued a valid privilege license to operate a flea market business at premises that they leased at the fixed location of 3113 South Liberty Street, in Canton under the trade name of "Fancy That Flea Festival". The license which the Larsons held was not a Flea Market permit, but an ordinary business privilege license. A flea market is neither a nuisance *per se* or *per accidens*, but the Larsons' leased property is outside the Flea Market Zone established in the ordinance.

The Larsons had intended to open and conduct their licensed flea market business for profit at 3113 South Liberty Street on the second Thursday of May, 1994 (May 12, 1994), and they made some necessary preparations to do so. They intended to rent spaces to third party vendors to exhibit and sell wares at "Fancy That Flea Festival" on that date. The City, through its attorney, informed the Larsons on May 2, 1994, that their proposed operation of their flea market was in specific violation of the Ordinance because it was outside the designated Flea Market Zone. Rather than face prosecution under the ordinance, the Larsons canceled their May 12, 1994 flea market business. However, the Larsons have operated their flea market business on all days that they wished to do so except on May 12, 1994, and October 13, 1994.

The case was tried using an agreed upon stipulation of facts. On April 25, 1995, the chancellor rendered his final judgment, which held that the City of Canton's Flea Market Ordinance was properly constituted and was a legitimate exercise of the City's right to tax a business enterprise and to provide services and protection to its citizens and visitors. That final judgment also held that the Larsons could operate their flea market business at its fixed location on any legitimate business day, including the second Thursday in May and in October, but that the Larsons could not rent spaces to third party vendors, not holding valid Flea Market Permits, on the second Thursday in May or October of any year.

The Larsons appealed, claiming that they could not operate their business on any day without renting space to third party vendors, thus the effect of the judgment is that they are totally prohibited from operating their business of the second Thursdays of May and October.

### <u>DISCUSSION OF LAW</u>

**I.**

**BECAUSE THE LARSONS ARE NOT TRANSIENT VENDORS WITHIN THE MEANING OF MISS. CODE ANN. § 75-85-1 ET SEQ., THE CITY OF CANTON HAD NO AUTHORITY UNDER MISS. CODE ANN. § 21-19-35 TO PROHIBIT THE LARSONS' DULY LICENSED FLEA MARKET WHICH OPERATES FROM A FIXED LOCATION.**

Mississippi has enacted a transient vendor law which requires a transient vendor to obtain a license or pay a fee in each county or municipality before he or she may transact business there. Miss. Code

Ann. § 75-85-1 *et seq.* (1972). The Larsons argue that duly licensed flea markets, such as theirs, which operate from a fixed location are not transient vendors within the meaning of the statute and are specifically exempted from the transient vendor law under Miss. Code Ann. § 75-85-3(1)(h). Because they are specifically exempt from the transient vendor statute, they argue that the City has no authority to prohibit their flea market from operating on the Flea Market Days set out in the ordinance.

While the Larsons are correct to argue that they are exempt from the transient vendor statute, it cannot be said that the third-party vendors who sublet space from the Larsons are exempt. As a matter of fact, Miss. Code Ann. § 75-85-3(2) specifically states that such vendors are not exempt because of their association with exempt merchants such as the Larsons. Therefore, the Larsons' claim that the City could not regulate them under the ordinance is misplaced. As a result, this Court finds that this claim is meritless.

## II.

### THE CITY'S FLEA MARKET ORDINANCE BEARS NO RELATIONSHIP WHATSOEVER TO THE PROTECTION OF THE PUBLIC HEALTH, SAFETY, MORALS OR GENERAL WELFARE, AND WAS THUS ENACTED AS AN INVALID EXERCISE OF THE CITY'S POLICE POWER AND IS NULL AND VOID.

Miss. Code Ann. § 21-19-15 gives municipalities the authority to enact police regulations to preserve good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property. Municipalities have the power to adopt reasonable regulations to protect and preserve the property and health of the community. *City of Vicksburg v. Mullane*, 106 Miss. 199, 211, 63 So. 2d 412 (1913). This Court has stated that there can be established no fixed and permanent guide to settle in future cases what is or is not a reasonable exercise of regulatory powers. Each case must be settled by its own facts. *Johnson v. City of Philadelphia*, 94 Miss. 34, 41, 47 So. 526, 527 (1908). Canton is not a very large city. Because the Canton Flea Market is one of the largest in the state, with up to and over 45,000 people attending, the population of Canton grows significantly on Flea Market Day. The method that the city chose to regulate the event was the Flea Market Ordinance. It is a rational and reasonable scheme limiting the event to a confined area to allow for proper police protection, adequate sanitary facilities, and reasonable traffic control. Left unchecked, it is possible that unregulated pedestrian and vehicle traffic could become logistically difficult. It seems reasonable that the City could control the Flea Market by regulating where the crowds would congregate. Therefore, the City could better plan where to expend the necessary municipal resources, such as police protection, fire protection, sanitary stations and emergency personnel, which accompany and are required by such an event.

Additionally, the Larsons may hold open their business on those days, they simply may not sublet to any third-party vendors on those days. If they were allowed to do so, they would be circumventing the purpose of the ordinance, which is to maintain reasonable control of a very high profile event.

Accordingly, this Court finds that this issue is meritless.

## III.

**BY DENYING THE LARSONS THE RIGHT TO OPERATE THEIR FLEA MARKET BUSINESS ON DAYS WHEN ALL OTHERS ARE PERMITTED TO OPERATE THEIR DULY ESTABLISHED AND LICENSED BUSINESSES, THE CITY OF CANTON'S FLEA MARKET ORDINANCE DENIES TO THE LARSONS THE EQUAL PROTECTION OF THE LAWS.**

The Fourteenth Amendment to the U.S. Constitution provides in part as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

§ 6 of the Canton Flea Market Ordinance provides:

> On Flea Market Days the exhibit of and/or sale of arts, crafts goods, wares, merchandise, plants, food or beverage of any type is prohibited except by those persons and/or business establishments possessing proper privilege licenses and except by those persons and/or businesses which have obtained a proper Flea Market Permit from the City of Canton. Garage sales, carport sales and those similar in nature are prohibited on Flea Market Days.

The Larsons take the position that they are denied the right to run their duly licensed and lawful business establishment on Flea Market Days, while all other business establishments are allowed to operate. However, the chancellor specifically stated that the Larsons are not prohibited from operating their business on Flea Market Days. He simply forbade them from renting space to third party vendors on that date. The Larsons contend that it is useless for them to open up their shop on Flea Market Days if they cannot rent out space to third party vendors. Thus, the effect of the chancellor's ruling is that they cannot operate their business on Flea Market Days. In this Court's opinion, this argument does not overcome the argument of the City that to allow unrestricted flea market sales would defeat the purpose of the ordinance. Once again, the purpose of the ordinance is to allow the city to maintain logistic control of the Flea Market, which for a single day can increase the population of the City of Canton by upwards of 45,000 people. The City also prohibits garage sales on Flea Market Days. This is obviously because someone could conceivably sell their wares outside the Flea Market Zone under the guise of a garage sale. This would circumvent the purpose of the ordinance, as well as cause the City to miss out on the sales tax and permit revenue which it gets from participants in the Flea Market. Likewise, vendors could simply set up at the Larsons' business and sell their goods, thus avoiding the need for a flea market permit. That vendor would then get the benefit of the additional traffic without having to bear the burden of paying for the permit to sell his goods. The City is correct to take precautions against such occurrences, and the Flea Market Ordinance is a reasonable means to achieve such and end.

Therefore, this Court finds this issue to be meritless.

### IV.

**THE CITY OF CANTON'S FLEA MARKET ORDINANCE WAS ENACTED FOR THE PURPOSE OF CREATING A MONOPOLY FOR THE CITY OF CANTON. THUS THE**

**ORDINANCE UNCONSTITUTIONALLY ABRIDGES THE PRIVILEGES AND IMMUNITIES OF THE LARSONS AND DEPRIVES THEM OF A VALUABLE PROPERTY RIGHT WITHOUT DUE PROCESS OF LAW OR JUST COMPENSATION.**

First, this Court would point out that the fact that a monopoly is created does not necessarily make that monopoly unconstitutional. The Larsons point out no authority which says so, and this Court could find none. In fact, some situations naturally lend themselves to the creation of a monopoly: public utilities which are regulated by a governmental body come readily to mind. Secondly, it is not readily apparent that the Canton Flea Market is a monopoly for the benefit of the City, since it is run by various civic, religious and nonprofit business organizations. As has been stated earlier, the City's role appears to be to maintain control for the health, safety, and welfare of the public. It escapes this Court how an ordinance which is reasonably constructed to achieve those ends is a "taking" without due process or just compensation.

Turning to the claims set out by the Larsons, those appear to be threefold:

(1) That the Larsons were denied Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and under Article III, § 14 of the Mississippi Constitution of 1890; (2) That the City abridged the Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution; (3) The denial of the right to sublet space to third persons is a taking under the Fifth Amendment to the United States Constitution.

This Court has not directly addressed the issue, but the United States Court of Appeals for the Fifth Circuit has held that once an action is characterized as legislative, procedural due process requirements do not apply. *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070, 1073 (5th Cir. 1989). This action was one taken by the Canton City Council, which is a legislative body. Therefore, if this Court follows the logic of *Jackson Court*, which we now choose to do, the Larsons's Due Process claim must fail.

The Larsons cite no authority that the ordinance violates any of the privileges and immunities of United States citizenship, and this Court does not particularly see any violation. It would appear that the Larsons are afforded all the protections of United States citizenship. Since the ordinance preexisted their ownership of "Fancy that Flea Festival," it would appear reasonable that they knew or could easily have found out that they were outside the Flea Market Zone. Furthermore, this issue also relates back to the fact that under the chancellor's judgment, the Larsons may themselves continue to operate their business. So there is no visible violation of the Privileges and Immunities Clause.

The determination of what constitutes a "taking" depends upon the facts of each individual case. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are relevant considerations. *Id.* So, too, is the character of the governmental action. A "taking" is more likely to be found where there has been a physical governmental invasion than when, as in this case, there has been governmental interference arising from a public program adjusting the benefits and burdens of economic life to promote the public good. *Id.* "Government could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Id.; Pennsylvania Coal*

*Co. v. Mahon,* 260 U.S. 393, 413 (1922).

The burden which has been imposed upon the Larsons is that for two days out of a year, they cannot sublet space in their business. Admittedly, their business may not be as profitable on those days as it is on any other day. But in the grand scheme, they cannot claim that their property rights have been interfered with to the point that there has been an unduly harsh impact upon the investment-backed business expectations of the Larsons.

As a result, This Court finds that this issue is meritless.

## CONCLUSION

This Court affirms the judgment of the chancellor as to all issues in this case because the Transient Vendor Statute is effective against any third-party vendors who would be seeking to rent space from the Larsons. Secondly, the Flea Market Ordinance does bear a rational relationship to the protection of the general health, welfare, and safety and is therefore within the City's police power. Additionally, The Larsons's equal protection claims must fail because the ordinance affects all similarly situated citizens in a like manner.

Finally, there has been no showing on the part of the Larsons that the ordinance violates any due process expectations under the Fifth or Fourteenth Amendments to the United States Constitution, or under the Mississippi Constitution of 1890, or that the ordinance effects a taking under the Fifth Amendment to the United States Constitution.

Accordingly, the judgment of the chancellor in this case is affirmed.

**JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**